IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION



FILED
AUG 2 4 2018
Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. DONALD MITCHELL JOHNSON *aka Ski Johnson*, Defendant. | CR 14–28–BU–DLC ORDER |

On May 16, 2018, the Court held a hearing regarding restitution owed by Donald Mitchell Johnson ("Johnson"). (Doc. 155.) Johnson was originally sentenced by this Court on November 13, 2015, and the Court ordered restitution in the amount of $5,648.58. (Doc. 113.) The Government appealed the Court's restitution order on November 25, 2015. (Doc. 117.) The Ninth Circuit vacated the restitution order and remanded the issue for reconsideration. (*United States v. Johnson*, 875 F.3d 422, 423 (9th Cir. 2017), cert. denied, 138 S. Ct. 703 (2018); Doc. 137.) The Court makes the following findings regarding restitution.

## **LEGAL STANDARD**

"A restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic

-1-

circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments." *See* 18 U.S.C. § 3664(f)(3)(B). The Mandatory Victims Restitution Act of 1998 ("MVRA"), 18 U.S.C. § 3663A et seq. requires restitution for a fairly broad set of federal crimes, including fraud. *See* 18 U.S.C. § 3663A(a)(1), (c). Such an order under the MVRA is limited to four categories of expenses:

> (1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense–
>
> (2) in the case of an offense resulting in bodily injury to a victim–
>
> (3) in the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and
>
> (4) in any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

*See* 18 U.S.C. § 3663A(b)(1)–(4). The only subsection applicable here is 18 U.S.C. § 3663A(b)(1). Under this prong, the Government must establish that the claimed victims were ". . . directly harmed by the defendant's criminal conduct in the course of the scheme . . . ." *See* 18 U.S.C. § 3663A(a)(2); *United States v. Kennedy*, 643 F.3d 1251, 1261–63 (9th Cir. 2011) (what constitutes proximate

cause under MVRA tends to avoid imposing liability on defendants whose conduct is too remote or tangential to a victims' specific losses).

The current iteration of the MVRA authorizes restitution for "any victim" of certain enumerated offenses. 18 U.S.C. § 3663(a)(1)(A). The act defines a "victim" as "any personal directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." *Id.* § 3663(a)(2). Here, the Court must order restitution for all victims harmed by Johnson's scheme, including those harmed by conduct beyond the count of conviction, so long as those additional victims are sufficiently related to Johnson's overall scheme to defraud. *Johnson*, 875 F.3d at 426.

## DISCUSSION

Johnson devised a four-year scheme to defraud victims throughout the United States under the pretense that he was a Grammy-nominated musician seeking to raise money for charity. In total, from 2011 to 2014, Johnson contacted 16 organizations, businesses, or individuals under the alias Kevin Wright or Mr. Wright, Richard Simms, or Larry Toye. In each case, Johnson falsely represented that he was a Grammy-nominated musician. Johnson would secure an invitation to a golf tournament, usually involving celebrities. In some instances Johnson also offered to split proceeds from the sale of Grammy tickets between the organization

and his fraudulent charity, Jazz for Life. On a number of occasions Johnson also falsely claimed he worked for Sony or represented Queen Latifah. Johnson also received individual donations to Jazz for Life, and then spent those donations in his personal capacity.

The Government contends that Johnson should be ordered to pay an additional $68,917.12 in restitution, on top of the $5,648.58 in restitution already ordered at sentencing. (Doc. 153 at 8.) Johnson contends that he is not liable for any additional restitution because the Government has not made an adequate showing that the losses listed by the Government directly resulted from Johnson's conduct. (Doc. 154.)

Under Rule 404(b), the scheme to defraud is much broader than the charged conduct. *United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016) ("The uncharged transactions, therefore, are part of the charged offense—the fraudulent scheme as a whole—not "other" crimes or "other" acts evidence."). To assess whether the evidence supports a single scheme, a court may consider the following factors: "(1) the nature of the scheme; (2) the identity of the participants; (3) the quality, frequency and duration of each conspirator's transactions; and (4) the commonality of time and goals." *United States v. Morse*, 785 F.2d 771, 774–75 (9th Cir. 1986). The Ninth Circuit found in *Morse* that "under the expansive

standard for a single scheme," multiple counts of wire fraud were supported by a single scheme. *Id.* at 775.

At the May 16, 2018 restitution hearing, the Government relied on the testimony of the following witnesses at the original sentencing hearing in support of its argument: Andy Karuza, Lauryn Barry, Jill Hardy, and Special Agent Greg Rice. (Doc. 111.) The Court finds that based on this evidence, additional restitution is warranted. The commonality of goals here includes a scheme to defraud from 2011 to 2014 that encompassed Johnson perpetrating he was a Grammy-nominee, a Sony representative, and/or he worked with Queen Latifah, in order to raise funds for his fraudulent charity and attend celebrity golf tournaments. Johnson used all money that he earned from his Jazz for Life foundation for his personal use.

The Court finds that the majority of testimony and evidence produced at trial involved Grammy tickets and Johnson's false claim to being a Grammy-nominee who was seeking to raise money for charity. (Doc. 86, 93.) Thus, only restitution connected to Johnson's scheme to defraud based on these representations will be ordered. Johnson was directly involved in the ventures outline by the Government. He was the main conspirator and his scheme was operated in sequence, with each charity event happening within a similar timeframe and all with a similar outcome.

Johnson either falsely represented his credentials, solicited donations for a fraudulent charity, or offered Grammy tickets he had no authority to sell or transfer. All of his acts of fraud from 2011 to 2014 had the common goal of enriching himself under the pretense of a charitable cause or false credentials.

The Court finds that restitution shall be expanded to include any overt act by Johnson during 2011 to 2014 where he purported to be a Grammy-nominee, had Grammy tickets for auction, or was raising money for a fraudulent charity. The referenced amounts below are documented in sworn testimony at the original sentencing and are reflected in the Government's schedules (Doc. 153 at 11–13.). The Government established all listed amounts are connected to Johnson's overall scheme to defraud.

Consequently, the Court orders the following additional amounts as restitution:

| Victim Name | Loss | Misrepresentation(s) | Citation |
|---|---|---|---|
| All Aboard Travel | $1913.00 | -Grammy winning artist<br>-Offered to auction Grammy tickets | Sent. Tr., Doc. 124 at 73-83. |
| Arkansas Lions Football program | $1050.00 | -Grammy nominated musician | Sent. Tr., Doc. 124 at 88-91 |
| Claddagh Fund | $600.00 | -Grammy winning musician | Sent. Tr., Doc. 124 at 91-94. |

|  |  | -Could procure the attendance of Queen Latifah |  |
|---|---|---|---|
| Doug Davis Foundation | $1200 | -Grammy nominated musician | Sent. Tr., Doc. 124 at 94-96 |
| Eco Golf Tournaments | $11,324.12 | -Grammy nominee<br>-Operated a children's cancer foundation<br>-Had access to Grammy tickets that he could auction | Sent. Tr., Doc. 124 at 96-102. |
| George Rogers Foundation | $900 | -Grammy nominated artist | Sent. Tr., Doc. 124 at 102-103. |
| Hilton Head Celebrity Golf Tournament | $1000 | -Grammy nominated artist<br>-Represented a children's cancer charity | Sent. Tr., Doc. 124 at 103-105. |
| Hospice of Palm Beach County | $13,695.00 | -Grammy nominated artist<br>-Represented foundation in memory of his parents who died from cancer<br>-Failed to produce auctioned Grammy tickets | Sent. Tr., Doc. 124 at 58, 60-68. |
| Leah McCammon Foundation | $6200 | -Grammy nominated musician<br>-Represented a children's cancer foundation | Sent. Tr., Doc. 124 at 105-108. |
| PayPal | $9300 | -Set up PayPal account for a charitable event and then used | Sent. Tr., Doc. 124 at 108-112; Sent. Ex. 18, Doc. |

|  |  | funds for his personal benefit | 111 at 19-20. |
|---|---|---|---|
| Pleased Golf, Inc. | $10,000 | -Grammy nominated artist<br>-Represented Sony Music<br>-Offered to auction Grammy tickets<br>-Represented a children's cancer foundation | Sent. Tr., Doc. 124 at 113-116. |
| Riverside County Economic Development Agency | $60.00 | -Grammy nominated musician<br>-Represented Queen Latifah | Sent. Tr., Doc. 124 at 116-118. |
| Mickey Steele Golf Classic | $500.00 | -Grammy winner<br>-Represented Halle Berry | Sent. Tr., Doc. 124 at 118-120. |
| Abyssina Baptist Church | $3100.00 | -Johnson solicited a donation to Jazz for Life Foundation for charity | Sent. Tr., Doc. 124 at 123-124; Sent. Ex. 19, Doc. 111 at 21. |
| Alctre Barnett | $150.00 | -Barnett wrote a check to Jazz for Life Foundation with a memo for "donation" | Sent. Tr., Doc. 124 at 132; Sent. Ex. 19, Doc. 111 at 22. |
| Sandra Lee Hendry | $2500.00 | -Johnson solicited a donation to Jazz for Life Foundation for a children's cancer charity | Sent. Tr., Doc. 124 at 124-126; Sent. Ex. 19, Doc. 111 at 23 |
| John Henrehan | $100.00 | -Henrehan wrote a check to Jazz | Sent. Tr., Doc. 124 at 132; Sent. Ex. 19, Doc. 111 |

|  |  | for Life Foundation with a memo for "donation" | at 24. |
|---|---|---|---|
| Kevin Little | $50.00 | -Little wrote a check to Jazz for Life Foundation with a memo for "donation" | Sent. Tr., Doc. 124 at 132-133; Sent. Ex. 19, Doc. 111 at 25. |
| Gerard Seabrooks | $25.00 | -Seabrooks wrote a check to Jazz for Life with a memo for "charity" | Sent. Tr., Doc. 124 at 133; Sent. Ex. 19, Doc. 111 at 26. |
| E.S. Smith | $100.00 | -Smith wrote a check to Jazz for Life Foundation with a memo for "donation" | Sent. Tr., Doc. 124 at 133-134; Sent. Ex. 19, Doc. 111 at 27. |
| Terry Stricklin | $5000.00 | -Johnson solicited a $2000 check for a children's cancer research and $3000 for Grammy tickets he was not authorized to sell | Sent. Tr., Doc. 124 at 126-128; Sent. Ex. 19, Doc. 111 at 31-32. |
| John Tyler | $100.00 | -Tyler wrote a $100 check to Jazz for Life Foundation with a memo for "charitable fundraiser" | Sent. Tr., Doc. 124 at 134; Sent. Ex. 19, Doc. 111 at 28. |
| Pamela Venor | $25.00 | -Venor wrote a $25 check to Jazz for Life with a memo for "Cont. to Jazz for Life" | Sent. Tr., Doc. 124 at 134; Sent. Ex. 19, Doc. 111 at 29 |

| Rosie Walker | $25.00 | -Walker wrote a $25 check to Jazz for Life with a memo for "donation" | Sent. Tr., Doc. 124 at 134-135; Sent. Ex. 19, Doc. 111 at 30. |
|---|---|---|---|
| **TOTAL:** | **$68,917.12** | | |

(Doc. 153 at 11-13.)

Accordingly, IT IS ORDERED that Defendant Johnson shall pay an additional $68,917.12 in restitution. The Court determines that the Defendant does not have the ability to pay interest and IT IS ORDERED that the interest requirement is waived for the restitution. 18 U.S.C. § 3612(f)(3).

IT IS FURTHER ORDERED that Johnson shall pay restitution at a rate of not less than $100 per month or as otherwise directed by U.S. Probation. Restitution payments shall be made to the Clerk, United States District Court, P.O. Box 8537, Missoula, MT 59807. Restitution shall be disbursed to the victims listed in the payee table above, and in the original Judgement (Doc. 113).

DATED this 24th day of August, 2018.

Dana L. Christensen, Chief Judge
United States District Court